UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS

| | | |
|---|---|---|
| T. DENNY SANFORD, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 3:15-cv-03832-N-BG |
| | § | |
| PERSHING LLC, | § | |
| | § | |
| Defendant. | § | |

## ANSWER TO COMPLAINT

### I. PARTIES

1. Pershing lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 1 and therefore denies those allegations.

2. Admitted.

### II. VENUE AND JURISDICTION

3. Paragraph 3 contains no allegations of fact but instead contains only conclusions of law to which no response is required. To the extent a response is required, Pershing denies the allegations in Paragraph 3.

4. Paragraph 4 contains no allegations of fact but instead contains only conclusions of law to which no response is required. To extent a response is required, Pershing denies the allegations in Paragraph 4.

### III. FACTUAL ALLEGATIONS

#### A. Introduction

5. Pershing admits that the Securities and Exchange Commission ("SEC") brought suit against Stanford Group Company ("SGC"), Stanford Bank International, Ltd. ("SIBL"), and

other entities on February 17, 2009. Except as expressly admitted, Pershing denies the allegations in Paragraph 5.

6. Pershing admits that it entered in a clearing agreement with SGC on December 27, 2005, and that Pershing provided ministerial clearing services. Except as expressly admitted, Pershing denies the allegations in Paragraph 6.

7. Pershing admits that there exists a March 20, 2007, email containing the quoted language. Except as expressly admitted, Pershing denies the allegations in Paragraph 7.

8. Pershing denies the allegations in Paragraph 8.

**B.      Pershing Shed its Rule 382 Protection**

9. Paragraph 9 refers to NYSE Rule 382, which speaks for itself. Except as expressly admitted, Pershing denies the allegations in Paragraph 9.

10. Pershing denies the allegations in Paragraph 10. The cases cited in footnote 2 speak for themselves.

11. Pershing admits that there exists an August 16, 2005, email between a Pershing employee and Stanford employees. Pershing specifically denies that any language about "partnership" had any legal or practical significance. Except as expressly admitted, Pershing denies the allegations in Paragraph 11.

12. Pershing denies the allegations in Paragraph 12.

13. Pershing denies the allegations in Paragraph 13.

14. Pershing denies the allegations in Paragraph 14.

**C.      The Pershing-Stanford Relationship**

15. Pershing admits that it had discussions with SGC about entering into a clearing relationship in 2005. Pershing admits that SGC had a clearing relationship with Bear Stearns as

far back as the 1990s that continued until 2009. Except as expressly admitted, Pershing denies the allegations in Paragraph 15.

16. Pershing lacks knowledge or information sufficient to form a belief as to the truth of the allegations in the first sentence of Paragraph 16 and therefore denies those allegations. Pershing denies the remaining allegations in Paragraph 16.

17. Pershing admits that a meeting between Pershing and SGC personnel took place. Except as expressly admitted, Pershing denies the allegations in Paragraph 17.

18. Pershing avers that it performed reasonable and appropriate due diligence on SGC prior to entering into the Fully Disclosed Clearing Agreement. Pershing admits that there exists an email from John Ward dated November 9, 2006. Except as expressly admitted, Pershing denies the allegations in Paragraph 18.

19. Pershing admits that there is an email dated June 8, 2007, by a Pershing employee. Except as expressly admitted, Pershing denies the allegations in Paragraph 19.

20. Pershing admits that its due diligence revealed that SGC received revenue from SIBL. Except as expressly admitted, Pershing denies the allegations in Paragraph 20.

21. Pershing admits that at some point it received information from SGC about inquiries by the SEC concerning the SIBL CDs. Except as expressly admitted, Pershing denies the allegations in Paragraph 21.

22. Pershing denies the allegations in Paragraph 22.

**D.  Pershing Played an Integral Role in Defrauding Over 18,000 Victims**

23. Pershing denies the allegations in Paragraph 23.

    **a.  Pershing was Motivated by the Opportunity to Clear $4.5 Billion in Assets**

24. Pershing denies the allegations in Paragraph 24.

3

25. Paragraph 25 refers to reports by SIBL concerning CD sales. Those reports speak for themselves. Except as expressly admitted, Pershing denies the allegations in Paragraph 25.

        **b.**      **Pershing Ignored the Red Flags and Disregarded Corporate Policy**

26. Pershing admits that it was informed that SIBL was audited by a firm called CAS Hewlett and that it received some information about the SIBL investment portfolio but not all the information requested. Except as expressly admitted, Pershing denies the allegations in Paragraph 26.

27. Pershing admits that in 2008 there were discussions about an independent review of certain SIBL records that at various times SGC agreed to conduct, but ultimately that an independent review did not take place as far as Pershing knew. Except as expressly admitted, Pershing denies the allegations in Paragraph 27.

28. Pershing acknowledges that it has AML compliance policies and procedures. Pershing admits that is required to comply with applicable federal law, such as the Bank Secrecy Act, the Patriot Act, and other AML laws but avers that those laws do not create any duty or standard of care relevant to this action. Except as expressly admitted, Pershing denies the allegations in Paragraph 28.

29. Pershing has AML policies that comply with governing law. Those policies speak for themselves. Except as expressly admitted, Pershing denies the allegations in Paragraph 29.

30. Pershing has AML policies that comply with governing law. Those policies speak for themselves. Except as expressly admitted, Pershing denies the allegations in Paragraph 30.

31.     Incident reports and Suspicious Activity Reports must be kept confidential pursuant to federal law, *see* 31 U.S.C. § 5318(g) & (h); 31 C.F.R. § 1023.320, and they should not be included as part of civil litigation.  Therefore, this allegation is improper, and no response is allowed.

32.     Pershing denies the allegations in Paragraph 32.

33.     Pershing has AML policies that comply with governing law.  Those policies speak for themselves.  Except as expressly admitted, Pershing denies the allegations in Paragraph 33.

34.     Pershing refers to its policies and policies and various documents generated pursuant to those policies and procedures.  Except as expressly admitted, Pershing denies the allegations in Paragraph 34.

35.     Pershing denies the allegations in Paragraph 35.

        **c.     Pershing and Stanford Engaged in a "Strategic Partnership"**

36.     Pershing acknowledges that the emails that discuss its clearing relationship with SGC and contain the words "partnership" or "strategic partnership."  Except as expressly admitted, Pershing denies the allegations in Paragraph 36.

        **d.     Pershing Recruited Stanford's Financial Advisors**

37.     Pershing admits that SGC sought to hire new financial advisers between 2005 and 2009.  Except as expressly admitted, Pershing denies the allegations in Paragraph 37.

38.     Pershing admits that Pershing employees would on occasion meet with new financial advisers being recruited by SGC to explain Pershing's services as a clearing firm.  Pershing also admits that there exists an email dated July 31, 2007.  Except as expressly admitted, Pershing denies the allegations in Paragraph 38.

5

39. Pershing denies the allegations in Paragraph 39.

40. Pershing denies the allegations in Paragraph 40.

41. Pershing denies the allegations in Paragraph 41.

42. Pershing denies the allegations in Paragraph 42.

43. Pershing admits that SGC had a Miami office and any designation of that office by FINRA or the NASD speaks for itself. Except as expressly admitted, Pershing lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 43 and therefore denies those allegations.

44. Pershing denies the allegations in Paragraph 44.

    e. **Pershing Provided Assurances Directly to FAs and Investors**

45. Pershing lacks sufficient knowledge or information to form a belief as to the mental state of the financial advisers or CD investors and therefore denies those allegations. Pershing denies the remaining allegations in Paragraph 45.

46. Pershing denies the allegations in Paragraph 46.

47. Pershing admits that an email dated October 3, 2008, was sent to numerous introducing firms and that a bulletin was released to numerous introducing firms on December 12, 2008. Except as expressly admitted, Pershing denies the allegations in Paragraph 47.

    f. **Pershing Senior Executive Senses Fraud Immediately**

48. Pershing admits that Richard Closs was hired in May 2006 as a credit risk manager and that Closs examined credit matters related to SGC. Except as expressly admitted, Pershing denies the allegations in Paragraph 48.

49. Pershing admits that Closs examined credit matters related to SGC. Except as expressly admitted, Pershing denies the allegations in Paragraph 49.

50. Pershing admits that Closs's examination of credit matters included assessing referral fees to SGC from SIBL. Except as expressly admitted, Pershing denies the allegations in Paragraph 50.

51. Pershing admits that at various times Closs or other Pershing employees asked for information concerning SGC's capital and financial statements and financial information pertaining to SIBL, the CDs, and Allen Stanford. Except as expressly admitted, Pershing denies the allegations in Paragraph 51.

52. Pershing admits that there exists an August 30, 2006, email from Richard Closs. Except as expressly admitted, Pershing denies the allegations in Paragraph 52.

53. Pershing admits that Closs examined credit matters related to SGC. Except as expressly admitted, Pershing denies the allegations in Paragraph 53.

54. Pershing admits that Closs examined credit matters related to SGC. Except as expressly admitted, Pershing denies the allegations in Paragraph 54.

55. Pershing admits that a telephone call took place on August 31, 2006, in which Laura Pendergest-Holt and Richard Closs participated. Pershing also admits that there exists an email dated September 19, 2006. Except as expressly admitted, Pershing denies the allegations in Paragraph 55.

56. Pershing admits that there exist emails dated September 6, 2006, and September 1, 2006. Except as expressly admitted, Pershing denies the allegations in Paragraph 56.

57. Pershing admits that at various times Claire Santaniello held the position described in Paragraph 57. Except as expressly admitted, Pershing denies the allegations in Paragraph 57.

58.     Pershing admits that Pershing employees met with SGC employees in August 2007, and that Richard Closs, John Ward, and George Arnett travelled to Antigua in January 2008 to meet with SIBL officials and Antiguan regulators.  Pershing admits that at some point, Closs learned that the auditor from CAS Hewlett would not be at the meeting.  Except as expressly admitted, Pershing denies the allegations in Paragraph 58.

59.     Pershing avers that SGC provided some information to Pershing but not all of the information that Pershing sought.  Pershing admits that there were discussions of an independent review of certain SIBL records in early 2008 and that in November 2008, SGC informed Pershing that no independent review would be performed.  To the extent Paragraph 59 refers to news articles, those articles speak for themselves.  Except as expressly admitted, Pershing denies the allegations in Paragraph 59.

60.     Pershing admits that in December 2008, members of Pershing management met to decide how to respond to SGC's recent refusal to commit to an independent review.  Except as expressly admitted, Pershing denies the allegations in Paragraph 60.

61.     Pershing admits that in December 2008, it decided to discontinue certain wire transfers.  Except as expressly admitted, Pershing denies the allegations in Paragraph 61.

62.     Pershing admits that there exists an email chain between Richard Closs and Tom Meder dated December 12, 2008.  Except as expressly admitted, Pershing denies the allegations in Paragraph 62.

63.     Pershing denies the allegations in Paragraph 63.

8

**E.     Pershing Does Anything It Can To Maintain Its Relationship With Stanford.**

64.     Pershing denies the allegations in Paragraph 64.

65.     Pershing admits that there exists an email between Pershing employees dated January 7, 2009.  Except as expressly admitted, Pershing denies the allegations in Paragraph 65.

66.     Pershing denies the allegations in Paragraph 66.

67.     Pershing admits that there exists an email dated February 2, 2009.  Except as expressly admitted, Pershing denies the allegations in Paragraph 67.

## COUNT ONE:
## PARTICIPATION IN BREACH OF FIDUCIARY DUTY

68.     Pershing incorporates its answers to Paragraphs 1 through 67 as if fully set forth herein.

69.     Pershing denies the allegations in Paragraph 69.

70.     Pershing denies the allegations in Paragraph 70.

71.     Pershing denies that the plaintiff is entitled to any damages against Pershing.

## COUNT TWO:
## FRAUD

72.     Pershing incorporates its answers to Paragraphs 1 through 71 as if fully set forth herein.

73.     Pershing denies the allegations in Paragraph 73.

74.     Pershing denies the allegations in Paragraph 74.

75.     Pershing denies the allegations in Paragraph 75.

76.     Pershing denies the allegations in Paragraph 76.

77.     Pershing denies that the plaintiff is entitled to any damages against Pershing.

## PRAYER

No response is required to the plaintiff's prayer for relief, but Pershing denies that the plaintiff is entitled to any relief or damages against Pershing.

## JURY DEMAND

The jury demand is legal conclusion to which no response is required.

## DEFENSES

Pershing states the following defenses and reserves its right to assert other and additional defenses when and if they become appropriate. In asserting these defenses, Pershing does not assume any burden of proof with respect to any issue where the applicable law places the burden upon Plaintiff.

1. The Complaint fails to state a claim upon which relief can be granted.

2. Some or all of the plaintiff's claims are barred by the applicable statute of limitations and statutes of repose.

3. Some or all of the plaintiff's claims are barred by laches.

4. The plaintiff cannot establish that any Pershing conduct caused him any injury in fact.

5. The plaintiff was not damaged by any Pershing conduct.

6. On information and belief, the plaintiff failed to take action that was reasonable or necessary under the circumstances to avoid or reduce his alleged damages, if any, including but not limited to filing claims with the U.S. Receiver or Antiguan Liquidator in connection with their Stanford CD losses. The plaintiff's claims are barred to the extent of such failure to mitigate damages.

7. The plaintiff's claim for damages, if any were incurred, must be reduced and/or eliminated in proportion to the extent to which such damages were caused by the negligence or other fault of persons other than Pershing.

8. The plaintiff's claim for damages, if any, were incurred, must be reduced and/or eliminated in proportion to the extent that such damages were caused by the plaintiff's own negligence or fault.

9. The plaintiff's claim for damages, if any were incurred, must be reduced and/or eliminated to the extent to which the plaintiff has received compensation from any other source, including (but not limited to) insurance proceeds; payments from the Securities Investor Protection Corporation; distributions from the U.S. Receiver or Antiguan Liquidator; and settlements or judgments from claims against other third parties.

10. The plaintiff's claims for damages, if any were incurred, must be reduced and/or eliminated to the extent to which the claims are barred or mitigated by the equitable defense of *in pari delicto*.

11. The plaintiff's claims for damages, if any were incurred, must be reduced and/or eliminated to the extent which his losses were caused by responsible third parties under applicable law.

12. The plaintiff's claims are barred because the acts and omissions of other third parties constitute, individually or in the aggregate, the sole proximate cause or new and independent causes of any losses sustained by the plaintiff.

13. Any alleged damages are due to the acts or omissions of third parties over whom Pershing had no control or right to control.

14. The Complaint fails to state a claim against Pershing because Pershing did not sell or participate in the sale of the Certificates of Deposit that are the subject of the Complaint, nor did Pershing participate in the making of any fraudulent statements.

15. The Complaint fails to state a claim against Pershing because Pershing did not aid in the sale of the Certificates of Deposit that are the subject of the Complaint.

16. The plaintiff's claims are preempted by The National Securities Market Improvement Act of 1996 (15 U.S.C. § 77r *et seq.*), which provides in pertinent part that state securities registration laws may not directly or indirectly prohibit, limit, or impose conditions on the sale of covered securities.

17. The Complaint fails to state a claim against Pershing because the plaintiff did not purchase securities from Pershing.

18. Pershing bears no liability pursuant to the terms of any applicable contracts with the plaintiff, including the indemnification and "hold harmless" provisions of such contracts.

19. The plaintiff cannot recover because he did not join all necessary parties.

20. The plaintiff's claims are barred by the doctrine of estoppel.

21. The plaintiff's claims are barred by their releases and waivers of registration claims under state law, including but not limited to releases and waivers contained in correspondence, statements, and notices the plaintiff received from Pershing.

22. The claims of any the plaintiff are barred to the extent that the plaintiff did not qualify as an "accredited investor" as defined in applicable law and in the subscription materials for the purchase of SIBL CDs. In such circumstances, misrepresentations about accredited investor status would constitute the sole proximate cause or a new and independent cause of any losses sustained by the plaintiff.

23. The plaintiff's claims are barred, in whole or in part, because the plaintiff lacks standing to pursue and does not own some or all of his alleged claims.

24. The plaintiff's claims are barred, in whole or in part, because the entity that owns them and has standing to assert them has released Pershing and has agreed to refrain from suing Pershing.

25. The plaintiff's claims are barred, in whole or in part, because he relies on AML statutes and Pershing's AML policies and procedures, none of which creates any duty or standard of care.

WHEREFORE, Pershing requests that the Court enter judgment in favor of Pershing, award its attorney's fees as the prevailing part, costs, and such additional relief as the Court deems appropriate.

Dated: June 10, 2016.

        Respectfully submitted,

        */s/ Thomas M. Farrell*
        Thomas M. Farrell
        Texas State Bar No. 06839250
        tfarrell@mcguirewoods.com

        ATTORNEY PERSHING LLC

Of Counsel:

McGuireWoods LLP
600 Travis Street, Suite 7500
Houston, Texas 77002
(713) 571-9191
(713) 571-9652 – Facsimile

Jeffrey J. Chapman
New York Bar Number 295589
McGuireWoods LLP
1345 Avenue of the Americas
Seventh Floor
New York, NY 10105-0106
(212) 548-2100
(212) 548-2150 – Facsimile
jchapman@mcguirewoods.com

Wm. Grayson Lambert
North Carolina Bar Number 44549
McGuireWoods LLP
201 North Tryon Street, Suite 3000
Charlotte, NC 28202
(704) 343-2367
(704) 444-8718 – Facsimile
glambert@mcguirewoods.com

**CERTIFICATE OF SERVICE**

  I hereby certify that on the 10th day of June, 2016, I electronically filed the foregoing document with the Clerk of the Court for the United States District Court, Northern District of Texas, using the electronic case filing system of the Court. The electronic case filing system will send a "Notice of Electronic Filing" to the following attorneys of record who have consented in writing to accept this Notice as service of this document by electronic means:

  James E. Cecchi
  Linsey H. Taylor
  Carella, Byrne, Cecchi, Olstein, Brody & Agnello, P.C.
  5 Becker Farm Road
  Roseland, New Jersey 07068
  Email: jcecchi@carellabyrne.com

  Michael E. Criden, Esquire
  Criden & Love, P.A.
  7301 SW 57th Court, Suite 515
  South Miami, Florida 33143
  Email:  mcriden@cridenlove.com

  Robert Cecil Gilbert
  Kopelowitz Ostrow Ferguson Weiselberg Gilbert
  2525 Ponce de Leon Boulevard, Suite 625
  Coral Gables, Florida 33134
  Email: Robert@gilbertpa.com

  Scott D. Hirsch Esq.
  Scarlett & Hirsch, P.A.
  Boca Corporate Center
  7777 Glades Road, Suite 200
  Boca Raton, FL  33434
  Email: scott@shlawfla.com

                */s/ Thomas M. Farrell*
                Thomas M. Farrell