IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| T. DENNY SANFORD, *et al.*, | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | Civil Action No. 3:15-CV-03832-N |
| | § | |
| PERSHING, LLC, | § | |
| | § | |
| Defendant. | § | |

**MEMORANDUM OPINION & ORDER**

This Order addresses Plaintiffs' motion for leave to file an amended proposed pretrial order and Plaintiffs' unopposed motion for suggestion of remand to the District of New Jersey [99]. Because the MDL is winding down, the Court grants the motion for suggestion of remand to the District of New Jersey. Additionally, the Court declines to rule on Plaintiffs' motion for leave to file an amended proposed pretrial order and leaves the question to the District of New Jersey.

## I. Background on The Stanford MDL

This case arises out of the Ponzi scheme perpetrated by R. Allen Stanford, his associates, and various entities under his control (collectively, "Stanford"). The facts of Stanford's scheme are well-established, *see, e.g., Janvey v. Democratic Senatorial Campaign Committee, Inc.*, 712 F.3d 185, 188–89 (5th Cir. 2013), and are not recounted in great detail here. Reduced to its essence, Stanford's scheme involved the sale of fraudulent certificates of deposit ("CDs") issued by Stanford International Bank, Ltd.

("SIBL"), an offshore bank based in Antigua. Although Stanford represented to investors that CD proceeds were invested in only low risk, high return funds, in reality the CD proceeds were used to finance Stanford's own extravagant lifestyle and pay off previous investors.

The Securities and Exchange Commission (the "SEC") brought a civil suit in this District against Stanford, his agents, and his corporations on February 16, 2009. The SEC asked the Court to appoint a receiver for Stanford and his companies in order to preserve the Stanford corporations' resources and pursue the corporations' assets that were in the hands of third parties as a result of fraudulent conveyances. This Court then appointed Ralph S. Janvey (the "Receiver") as receiver and authorized him to commence any actions necessary to recover assets of the Receivership Estate.

The SEC's filing of the receivership instituted a flood of litigation in both federal and state courts. By Order dated October 6, 2009, the JPML centralized the federal Stanford litigation in this Court. *In re Stanford Entities Litig.*, 655 F. Supp. 2d 1360 (J.P.M.L. 2009). The Panel's rationale for MDL centralization was that "[a]ll actions arise out of the alleged $8 billion fraud" perpetrated by R. Allen Stanford through the Stanford companies he controlled. *Id*. at 1360. The Panel further reasoned that common factual questions existed, involving "alleged misrepresentations or omissions relating to the safety of Stanford investments." *Id*. at 1361. These included whether "claims focus on (1) alleged misrepresentations or omissions by Stanford, (2) insurance coverage letters used by Stanford to promote its investments or (3) the alleged role of The Commonwealth of Antigua and Barbuda in the alleged Stanford fraud . . . ." *Id*.

The receivership has proceeded along five fronts: (1) primary claims against Stanford and the Stanford principals; (2) establishment of an investor claims and distribution procedure; (3) asset recovery; (4) clawback litigation against certain Stanford investors and employees; and (5) third-party litigation against other entities (bankers, insurers, accountants, lawyers, etc.) that the Receiver believed had facilitated the Stanford Ponzi scheme.

Stanford and the Stanford principals were criminally prosecuted in the Southern District of Texas and were either found guilty or pled guilty. The SEC obtained summary judgment against Stanford in the receivership action. In connection with asset recovery,[1] the Receiver took control of Stanford's books and records and has completed an extensive forensic analysis of those records. The Stanford principals have been deposed from prison, and the Receiver's forensic expert has testified and been deposed multiple times. The Receiver has established a document repository for the recovered Stanford records and established procedures for litigants to obtain access to those materials.

The first three fronts of the receivership are substantially complete. The clawback and third-party litigation are now winding down.

## II. BACKGROUND ON *PERSHING*

*Pershing* is one of the few remaining third-party cases within the Stanford MDL. In October 2015, Plaintiff Denny Sanford brought this suit in the District of New Jersey,

[1] The Receiver's asset recovery efforts were complicated by the existence of a parallel receivership process under the auspices of the government of Antigua and Barbuda, which had arguably sheltered the Stanford enterprises.

alleging that Pershing aided and abetted Stanford's breach of fiduciary duty and committed indirect fraud. The Panel subsequently transferred this case to the Northern District of Texas and assigned it to the undersigned.

Pershing filed a motion for summary judgment, arguing that (1) Sanford's claims are time-barred, (2) Sanford cannot establish a fraud claim, and that (3) Sanford's participation in breach of fiduciary duty claim fails on the merits. Def.'s Mot. Summ. J. [57]. The Court denied the motion, noting that Sanford's claims were not time-barred as a matter of law, and Sanford had successfully raised fact issues for all the required elements of indirect fraud and participation in breach of fiduciary duty. Mem. Op. & Order 24 [91]. At present, the parties have completed discovery and filed pre-trial orders. Parties have requested that the Court suggest remand to the Panel. The Court agrees that remand to the District of New Jersey is appropriate.

## III. THE COURT GRANTS PLAINTIFFS' MOTION FOR SUGGESTION OF REMAND

Pursuant to JPML Rule 10.1, Plaintiffs request that the Court suggest to the JPML that this case be remanded to the District of New Jersey. The Court grants the request.

### *A. Remand Standard*

Section 1407 states that "[e]ach action so transferred shall be remanded by the panel at or before the conclusion of such pretrial proceedings to the district from which it was transferred unless it shall have been previously terminated." 28 U.S.C. § 1407(a). However, it is "not contemplated that a Section 1407 transferee judge will necessarily complete all pretrial proceedings in all actions transferred and assigned to him by the Panel." *In re Evergreen Valley Project Litig.*, 435 F. Supp. 923, 924 (J.P.M.L. 1977).

Instead, the transferee judge "in his discretion will conduct the common pretrial proceedings with respect to the actions and any additional pretrial proceedings as he deems otherwise appropriate." *Id*. Therefore, in considering remand, the Panel is "greatly influenced by the transferee judge's suggestion that remand of the action is appropriate." *Id.*; *see also In re Data Gen. Corp. Antitrust Litig.*, 510 F. Supp. 1220, 1226–27 (J.P.M.L. 1979) (per curiam).

***B. Remand is Appropriate in This Case***

The Panel initially transferred *Pershing* because it involves questions of fact that are common to the actions previously transferred. However, considering that the MDL is winding down, akin to a bankruptcy proceeding, this case now shares little overlap with the remaining MDL cases. Thus, remand is appropriate for two primary reasons.

First, the common issues of fact between this case and the MDL have largely been resolved. Sanford's claims for indirect fraud and aiding and abetting a breach of fiduciary duty require proof of Stanford's underlying violation. However, given the proceedings in this Court and the Fifth Circuit, it is now beyond dispute that the Stanford companies operated as a Ponzi scheme, that SIBL CD investments were not managed as represented, and that such representations were material. Thus, the "key issue" in this case is not whether Stanford was primarily liable, but whether Pershing made actionable misrepresentations and willingly and substantially assisted in a breach of fiduciary duty. These issues are governed solely by New Jersey law.

Second, there is unlikely to be overlap in discovery. Pershing is not subject to any other claim within the MDL and will not be subjected to duplicative discovery upon

transfer. Further, this case is unlikely to benefit from any further discovery in the remaining MDL cases, as those cases are winding down and are unlikely to recover additional information on Stanford's scheme, nor any information regarding Pershing's involvement. Conversely, the discovery from this case is unlikely to affect the remaining MDL cases. Any benefits to consolidated case management are thus over.

Pershing does not oppose remand. Accordingly, the Court grants Plaintiffs' motion for suggestion of remand.

## CONCLUSION

Because there are no further benefits of consolidated case management, the Court grants Plaintiffs' motion for suggestion of remand. By separate Order, the Court will suggest remand to the JPML. Further, the Court concludes that it would be more appropriate for the District of New Jersey to decide any pending motions. As such, the Court declines to rule on Plaintiffs' motion for leave to file an amended proposed pretrial order.

Signed September 1, 2026.

David C. Godbey
Senior United States District Judge